**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

RANDLE L. DUGGER, II                                                                    PLAINTIFF

v.                                         Civil No.: 4:11-cv-04019

MONTE STRINGFELLOW, *et al.*                                               DEFENDANTS

<u>**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**</u>

Randle L.  Dugger, II, (Plaintiff), an inmate of the Sevier County Jail, in De Queen, Arkansas,

filed this case pro se and *in forma pauperis* under 42 U.S.C. § 1983.  ECF Nos. 1, 2.  Now before

the Court is the Motion for Preliminary Injunction, filed by the Plaintiff.  ECF No.  13.  Defendants

have made no response to the Motion for Preliminary Injunction.

Pursuant to the provisions of 28 U.S.C.  § 636 (b)(1) and (3), this case is referred to the

undersigned by the Honorable Paul K.  Holmes, III, United States District Judge for the Western

District of Arkansas.  For the following reasons, it is the recommendation of the undersigned that the

Motion for Preliminary Injunction, ECF No.  13, be **DENIED**.

**I.        BACKGROUND**

Plaintiff alleges in his Complaint that he requested a low-sodium diet upon his arrest and

incarceration in the Sevier County Jail.  ECF No.  1.  Plaintiff was told the jail did not budget for such

a diet, and that if Plaintiff proceeded with his grievances on the matter, the jail threatened it would

change the diet of sixty inmates.  *Id.*  Plaintiff alleges such actions would "get me killed."  *Id.*  The

grievance provided by the Plaintiff on this matter reflects that an unknown individual responded to

Plaintiff's grievance regarding a low sodium diet by stating that Plaintiff should provide the name of

the doctor who placed Plaintiff on a no salt diet, then the jail doctor, Dr.  Devlin, "will contact that

Dr.  to verify this diet and take the proper treatment.  If you don't have one then we can not change

the menu of 60 inmates to suit one." *Id.* at 6.

Plaintiff further alleges that within two weeks of his arrest, his blood pressure had risen from a reading of 100 to 130 systolic and 55 to 70 diastolic, to a "dangerously high" 189 to 212 systolic and 108 to 110 diastolic. *Id.* at 8. Plaintiff stated he had no alternative except to begin fasting to bring down his blood pressure. ECF No. 1. Plaintiff consumed nothing but water for ten days, and was then given what the jail calls a "diet tray." *Id.* The diet tray consisted of pasta with canned chili poured over the pasta. *Id.* Plaintiff was also told he would see the doctor in two day's time, and therefore ate part of that meal and the proceeding three meals. *Id.* According to Plaintiff, the high levels of sodium in the food was obvious from the taste of the food. *Id.*

Dr. Devlin checked Plaintiff's blood pressure and found it was dangerously high, and prescribed a "no salt added diet" for Plaintiff. ECF No. 1. Plaintiff alleges that the jail interpreted a "no salt added" diet to be one where the jail added no salt to the prepared food. *Id.* Plaintiff states a no salt added diet should be one where no salt was added during the preparation or processing of the food. *Id.* Plaintiff again continued his fast for ten days, then only consumed part of four meals, before resuming his fast. *Id.* It is uncertain in Plaintiff is stating he continued another, separate ten day fast, or if he is referring to the first fast documented in his Complaint. At some point when Plaintiff resumed fasting, he was "thrown into the hole on a medical hold." *Id.* Plaintiff also was not allowed to file any grievances after he saw the doctor. ECF No. 1.

Plaintiff continued a ten day fast, making it a full twenty days of fasting, losing thirty pounds and becoming so weak he could barely walk. *Id.* Plaintiff was taken to court after this fast, an unexpected event he and his attorney were not told about. *Id.* While at the courthouse a "large and intimidating officer" spoke to him about ending the fast. *Id.* Plaintiff states that due to his age, he

-2-

is almost sixty, and fasting which left him weak and disoriented, he could not speak long, and was "thrown back into the hole." *Id.*

Plaintiff then ate canned fruit and microwaved potatoes for five days, and was then fed the same as the other detainees. ECF No. 1. Plaintiff was in the hole for over two months, and was forced to either starve himself, or suffer dangerously high blood pressure. *Id.* Plaintiff states the damage to his health is "irreparable" and the diet forced on him by the Sevier County Jail is a "death sentence." *Id.*

Further, Plaintiff states that he has been without two hypertension medications for over a week, at the time of filing his Complaint. *Id.* Each month, Plaintiff runs out of all or part of his medications, and he states he no longer has access to the grievance procedure. *Id.* Specifically to the grievance procedure denial, Plaintiff states he is not given a grievance form when he requests one from a jailer, but if he gets one from another detainee, it is not logged. ECF No. 1. His verbal complaints are answered by stating that Defendant Horn has been informed. *Id.* Plaintiff's family is forced to purchase hypertension medication and bring it to the jail, or he does without. *Id.* At times, Plaintiff's family is unable to provide the medication, and he has none as his attempts to have the jail supply it to him have been unavailing. *Id.*

Plaintiff also claims he has been denied medical care, because he hurt his foot getting to his upper bunk, and requested medical care by submitting a grievance. *Id.* Over a week later, he was given a reply stating he was walking on the foot in court, and therefore did not need to see the doctor. ECF No. 1.

Plaintiff's allegations also include an allegation that unconvicted inmates are housed with convicted felons. *Id.* Plaintiff alleges this caused another unconvicted inmate to be harmed in an

altercation with a convicted felon.  *Id.*  Moreover, Plaintiff was given yard call with a convicted felon, and the felon stepped in front of the Plaintiff while the Plaintiff was jogging, causing the Plaintiff to have to avoid the felon, and injuring his hip in the process.  *Id.*  Plaintiff also claims he was moved to a cell with individuals he was "incompatible with" as an "effective means of forcing [him] to do what [the jail] wanted [him] to do."  *Id.*  Plaintiff also stated he was refused access to a law library. ECF No. 1.

For relief, Plaintiff requested the following:  (1) a Court Order that Sevier County Jail supply him with a reduced sodium diet as prescribed by the jail doctor; (2) the jail supply his prescribed medication before it runs out, so there are no gaps in the dosage; (3) detainees no longer be denied medical treatment by nonmedical personnel; (4) a federal investigation be initiated into the practices at the Sevier County Jail; (5) access to the law library; (6) the Sevier County Jail be ordered to transfer any inmate with needs for which they are unable to provide; and (7) to be awarded ten million in compensatory damages, if such damages are applicable.  *Id.*

On April 5, 2011, Plaintiff filed a Motion for Preliminary Injunction.  ECF No. 13.  In this Motion, Plaintiff states that copies of his grievances, which were part of this lawsuit, were taken from his cell, and another inmate was bleeding and in need of medical care and that inmate failed to receive such care.  *Id.*  Plaintiff requests the following injunctive relief: (1) for inmate Shane Burt to be able to join this suit as a Plaintiff; (2) for the Court to order Mr.  Burt to return to the doctor for an examination, (3) that this Court "seize all the [relevant] records at the De Queen Jail" including grievance logs, grievances, medical logs, medication purchase records and invoices, and any other records concerning the safety and well-being  of inmates; (4) an attorney be appointed to represent him; and (5) that Plaintiff and other inmates be allowed to send their complaint directly to the Court,

as the jail is denying any administrative remedies.  *Id.*

## II.      APPLICABLE LAW

The two kinds of immediate injunctive relief are Preliminary Injunctions and Temporary Restraining Orders and they differ in several respects,[1] but the applications for each are generally measured against the same factors, which were established in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc ).  The Court will consider: (1) the threat of irreparable harm to the movant; (2) the state of balance between the harm and the injury that granting the injunction will inflict on the other party litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  No single factor is dispositive, but the movant must establish a threat of irreparable harm.  *Id.*  Without a finding of irreparable injury, a preliminary injunction should not be issued.  *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) (en banc).

In *Gof v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995), the court addressed the district court's role in inmate applications for injunctive relief as follows:

> [I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration . . ..  The courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate.

---

[1]  Rule 65 of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party" FED. R. CIV. P. 65(a)(1), while a TRO "may be granted without written or oral notice to the adverse party or that party's attorney," but "only if" certain requirements are met. *See* FED. R. CIV. P. 65(b). Thus, a TRO may be, but does not have to be, issued *ex parte*, but a preliminary injunction cannot be issued without notice to the adverse party. However, although a preliminary injunction cannot be issued without notice, the fact that notice is provided does not necessarily mean that the relief granted will be a preliminary injunction rather than a TRO. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).  In the case at bar, it is clear the Defendants had notice, but chose not to respond to the Motion for a Preliminary Injunction.

*Id.* Courts are further cautioned that, "injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law." *Rogers v. Scurr*, 676 F.2d 1211,1214 (8th Cir. 1982) (quoting *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3rd Cir. 1969)).

### III.    DISCUSSION

#### The Threat of Irreparable Harm to the Movant

Plaintiff has requested the following injunctive relief: (1) for Shane Burt to be able to join this suit as a Plaintiff; (2) for the Court to Order Mr. Burt to return to the doctor for an examination, (3) that this Court "seize all the [relevant] records at the De Queen Jail" including grievance logs, grievances, medical logs, medication purchase records and invoices, and any other records concerning the safety and well-being of inmates; (4) an attorney be appointed to represent him; and (5) that Plaintiff and other inmates be allowed to send their complaint directly to the Court, as the jail is denying any administrative remedies. ECF No. 13. The Court will consider the threat of irreparable harm to movant, as to each request, in turn.

First, there is no irreparable harm, or threat of such, for Shane Burt to not be allowed to join this suit as a co-plaintiff. In fact, according to the relevant case law, the Prison Litigation Reform Act requires each prisoner who brings a civil action to submit a separate Complaint and separate application to proceed *in forma pauperis* ("IFP"), or pay the filing fee. *See e.g., Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001). While Mr. Burt provided what appears to be an affidavit or statement concerning the harm he alleges he has suffered at the Sevier County Jail, he has not provided a separate Complaint or separate application to proceed IFP, or paid a filing fee, and

therefore does not meet the PLRA provisions for becoming a plaintiff at this time.

Moreover, there is nothing alleged by Plaintiff to suggest Mr. Burt does not have access to a Section 1983 form, or access to request one from this Court, and thus bring his own Section 1983 action. Finally, regarding Mr. Burt, there is no indication how movant, the Plaintiff in this matter, would be harmed by Mr. Burt not being allowed to join this matter as a Plaintiff. Clearly, Mr. Burt has his own separate claims regarding his alleged denial of medical care, which appear unrelated to those brought by Plaintiff.

Second, Plaintiff requests the Court to order Mr. Burt to a doctor for an examination. ECF No. 13. This request is closely related to the previous request, in that movant, the Plaintiff herein, can not show how he would be harmed by Mr. Burt not being seen by a doctor for an examination through a Court Order. At the most, such harm fall to Mr. Burt, not Plaintiff. Additionally, it is well settled that a prisoner can not bring claims on behalf of other prisoners. *See Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (per curiam), *cert. denied*, 467 U.S. 1259 (1984); *Carter v. Romines*, 560 F.2d 395, 395 (8th Cir. 1977) (per curiam), *cert. denied*, 436 U.S. 948 (1978). Therefore, Plaintiff has not stated any irreparable harm to himself from Mr. Burt, a fellow inmate, not being ordered to the doctor for an examination.

Third, Plaintiff has requested that this Court "seize all the [relevant] records at the DeQueen Jail" including grievance logs, grievances, medical logs, medication purchase records and invoices, and any other records concerning the safety and well-being of inmates. ECF No. 13. Plaintiff states he requests this seizure before the records are "altered, lost, destroyed or otherwise disappear." *Id.* At the most, Plaintiff's motion is against the possibility of a remote future injury and as such fails to meet the *Dataphase* requirements. Plaintiff has not alleged or indicated any pending alteration or

destruction of these grievances is imminent.  Even if his requests are destroyed, Plaintiff can still rely on his own testimony and assertion that he availed himself to his administrative remedies that were available.  Moreover, Plaintiff can request these items through discovery at the present time, if he has not already done so.  Plaintiff can not meet his burden of showing immediate "irreparable injury, loss, or damage."

Fourth, Plaintiff has requested an attorney be appointed to represent him as he has no access to a law library, and he is incapable of handling a lawsuit with several plaintiffs.  The Court finds no irreparable harm will be done to Plaintiff if an attorney is not appointed to him at this time.  *In Mallard v. United States District Court*, 490 U.S. 296 (1989), the Supreme Court held that 28 U.S.C. § 1915 does not authorize a federal court to require an unwilling attorney to represent an indigent litigant in a civil case.  Section 1915(e)(1) provides: "the court may request an attorney to represent any person unable to afford counsel."  "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel."  *Edgington v. Missouri Dept. of Corrections*, 52 F.3d 777, 780 (8th Cir. 1995) (citation omitted).  "Once indigent pro se litigants meet their burden of showing that their complaints are not frivolous . . . counsel should be [requested] if the district court determines it is necessary."  *Id.*

Plaintiff, at this time, is the sole complaining party in this matter.  His concerns regarding bringing a lawsuit on behalf of multiple plaintiffs is the sort of remote factor which weighs against a demonstration of irreparable harm.  Also, while Plaintiff may not have access to a law library, there are several other ways in which Sevier County Jail may provide him access to the Court.  *See, Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (inmate unable to prevail on a denial of access to courts claim even where the denial of access to library was complete and systematic because

-8-

meaningful access to the court is broader than access to a law library).  Therefore, Plaintiff can not show any irreparable harm will occur to him if an attorney is not appointed at this time.

Fifth and finally, Plaintiff requests injunctive relief for the inmates to send their "complaint" directly to the Court.  ECF No. 13.  It is unclear whether Plaintiff is referring to the grievance procedure or to a Complaint initiating a law suit.  As there is no alleged requirement for a Complaint to initiate a lawsuit be sent through the jail or its administration, the Court will assume Plaintiff is requesting that grievances be sent to the Court as Plaintiff alleges he is being denied administrative remedies.  Again, the Court finds there is no irreparable harm demonstrated to give rise to injunctive relief at this time.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp.2d 559, 569 (W.D. Va.2000) (citations omitted); *see also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000) (inmate has no constitutional entitlement to grievance procedure), aff'd, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).  A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (citing, *Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000), aff'd, 6 Fed. Appx. 187 (4th Cir. 2001)).  "Therefore, the refusal to process an inmate's grievance or failure to see to it that

grievances are properly processed does not create a claim under § 1983." *Cancel v. Goord*, 2001 WL 303713, *3 (S.D. N.Y. March 29, 2001).

As the Court finds Plaintiff fails to satisfy the first *Dataphase* factor of irreparable harm, the Court will not address the other factors.

## IV.    CONCLUSION

Accordingly, I **RECOMMEND** the Motion for Injunction, ECF No.  13, be **DENIED**, for the forgoing reasons.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **19th day of May 2011.**

/s/     Barry A.  Bryant
HON.  BARRY A.  BRYANT
U.S. MAGISTRATE JUDGE